# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| W. BROOKS WATSON, ET AL. | * | CIVIL ACTION NO. 17-1331 |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| ARKOMA DEVELOPMENT, LLC, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss filed by Defendant Southern Natural Gas Company, LLC ("SNG") [doc. # 33] and a motion to dismiss filed by Defendant ConocoPhillips Company, as alleged successor to Phillips Petroleum Company ("Conoco") [doc. # 34]. The motions are opposed. For reasons explained below, it is recommended that the motions be GRANTED IN PART and DENIED IN PART.

## Background

This case, filed in state court on June 27, 2017, and removed to this court on October 17, 2017, arises out of Defendants' alleged oil and gas exploration and production activities that contaminated or otherwise harmed real property located in Tensas Parish, Louisiana owned and/or used by Plaintiffs (the "Property"). (Petition ¶ 2, [doc. # 1-1]). Specifically, Plaintiffs allege that, since the 1920s, the operation of various wells and related facilities resulted in the disposal of oilfield waste in unlined earthen pits, which have contaminated the surface and subsurface of the Property. (*Id.* ¶¶ 5, 7). Plaintiffs allege that each of the Defendants or their predecessors-in-interest participated in the various oil and gas exploration and production

1

activities and knew or should have known that the operations would contaminate the Property. (*Id.* ¶¶ 6, 12).

On June 12, 2018, SNG and Conoco filed their respective motions to dismiss. [docs. # 33, 34]. Plaintiffs filed their opposition on July 5, 2018. [doc. # 38]. Conoco and SNG replied on July 10, 2018, and July 12, 2018, respectively. [docs. # 39, 40]. On July 23, 2018, Plaintiffs, with leave of the Court, filed a supplemental opposition [doc. # 43]. On July 26, 2018, SNG, with leave of the Court, filed a supplemental reply. [doc. # 46]. This matter is ripe.

## <u>Standard of Law</u>

Federal Rule of Civil 12(b)(6) sanctions dismissal when plaintiff fails "to state a claim upon which relief can be granted." A pleading states a claim for relief when, *inter alia*, it contains "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombl*y, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully, *id.*; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Although the Rule 8 pleading standard of does not require "detailed factual allegations," mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

In deciding a Rule 12(b)(6) motion, a court may rely on the complaint, its attachments,

"documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Additionally, a court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A court may permit a well-pleaded complaint to proceed even when "actual proof of those facts is improbable" or recovery is unlikely. *Twombly*, 550 U.S. at 556. But a court will dismiss a complaint "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 67. Overall, assessing whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## <u>Discussion</u>

### I.    **Restatement (Second) of Torts § 324A**

Louisiana courts recognize the common law "Good Samaritan Doctrine" codified in the Restatement (Second) of Torts § 324A, which provides

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [perform] his undertaking, if
> > (a) his failure to exercise reasonable care increases the risk of harm, or
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Bujol v. Entergy Servs., Inc.*, 2003-0492 (La. 5/25/04), 922 So. 2d 1113, 1128 (quoting Restatement (Second) of Torts § 324A). This doctrine is typically "used to impose liability upon an actor who has failed to exercise reasonable care when it undertook to perform a duty owed to a third party." *Id.*

In support of their motions, SNG argues that Plaintiffs have failed to allege that SNG "undert[ook] to render services to another," and Conoco argues that Plaintiffs have not alleged that Conoco "rendered services" that were "necessary for the protection of Plaintiffs." (SNG Mem. at 2, [doc. # 33-1]; Conoco Mem. at 11, [doc. # 34-1]). Plaintiffs respond that their Petition "clearly states a cause of action," because as successors, "defendants assumed duties owed to the plaintiffs to protect the Property from contamination and harm." (Opp. Mem. at 13, [doc. # 38]). Plaintiffs also claim that SNG erroneously relies on *Alford v. Chevron U.S.A. Inc.*, 13 F. Supp. 3d 581 (E.D. La. 2014), to support its motion, which can be distinguished from this case because it involved a defendant who did not operate on the plaintiff's property at all. (*Id.* at 12).

In its reply, SNG reiterates that Plaintiffs have failed to allege that SNG undertook "services." (SNG Reply Mem. at 1-2, [doc. # 40]). Further, SNG notes that Plaintiffs' attempt to distinguish *Alford* ignores the fact that "this Court has evaluated this exact allegation . . . numerous times and dismissed this claim as to both operators and non-operators." (*Id.* at 2). Conoco replies that Plaintiffs have failed to explain how Conoco's "alleged operations constituted (1) services (2) rendered to Plaintiffs' predecessors that (3) were 'necessary for the protection of a third person or his things.'" (Conoco Reply Mem. at 7, [doc. # 39]).

Upon review of the Petition, the undersigned finds that Plaintiffs have failed to allege that SNG and Conoco undertook to render services to Plaintiffs or their predecessors. The Petition states that "defendants are liable to plaintiffs under the provisions of Section 324A of the Restatement 2d, as interpreted by Louisiana jurisprudence. Under Section 324A, one or more of the defendants assumed duties owed by others to the plaintiffs to protect plaintiffs and their

Property from contamination and harm." (Petition ¶ 16). Other than this assertion, which Plaintiffs simply repeat in their opposition brief, Plaintiffs plead no facts to support its allegation that these defendants or their predecessors undertook any duty to render services. Courts in this circuit have consistently dismissed claims under Section 324A on similar facts, when plaintiffs fail to allege defendants undertook to render services to them. *See, e.g.*, *Ritchie Grocer Co. v. 2H, Inc.*, No. 1:14-CV-02868, 2015 WL 9589890, at *4 (W.D. La. Sept. 16, 2015); *Tureau v. 2H, Inc.*, No. 1:13-CV-02969, 2015 WL 4694072, at *7 (W.D. La. Aug. 6, 2015); *Alford*, 13 F. Supp. 3d at 602-03.

Accordingly, it is recommended that Plaintiffs' claim under Restatement (Second) of Torts § 324A be dismissed.

## II.    Continuing Tort and Continuing Trespass

Plaintiffs allege that the defendants are "guilty of a continuing tort and a continuing trespass" because their "acts or omissions, and their continuing unlawful conduct, have caused successive damages or an ongoing and cumulatively increasing deterioration of plaintiffs' Property." (Petition ¶ 17). SNG and Conoco argue that Plaintiffs have failed to allege any continued action by the defendants to support a cause of action for a continuing tort or a continuing trespass. (SNG Mem. at 3-4; Conoco Mem. at 4).[1]

In response, Plaintiffs claim to "have clearly and sufficiently alleged that the Defendants are guilty of a tort" because the pits on the Property were not properly closed, so that the tortious conduct continued after Defendants abandoned their operations. (Opp. Mem. at 22). Plaintiffs

---

[1] Conoco also argues that Plaintiffs have failed to allege a cause of action for continuing nuisance. (Conoco. Mem. at 4). Upon review of the Petition and Plaintiffs' brief, Plaintiffs do not appear to allege a separate theory of continuing nuisance. Thus, the court need not address this argument.

cite *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 253-55, for the proposition that "[u]ntil a pit is properly closed, the disposal *or storage* of any contamination in the pit constitutes a continuing tort." (Opp. Mem. at 23). Plaintiffs claim it is "common sense" that "[w]hile a pit remains open, the hazardous contents can be driven underground by the pressure of rainwater, thus presenting an exacerbating situation that is not present with properly closed pits." (*Id.* at 22). In the alternative, Plaintiffs agree to amend paragraph 17 of their Petition to remove the word "continuing" and "further agree to argue about the continuing tort exception as a defense to prescription if and when a prescription hearing occurs." (*Id.*at 25).

SNG and Conoco reply that Plaintiffs' interpretation of *Marin* is incorrect and has been expressly rejected by this court in *Sweet Lake Land & Oil Co. LLC v. Exxon Mobil Corp.*, No. 2:09CV1100, 2011 WL 4591084 (W.D. La. Sept. 29, 2011) and *Ritchie*, 2015 WL 9589890, at *2-3. [SNG Reply Mem. at 3-4; Conoco Reply Mem. at 4-5].

Continuing torts and continuing trespasses are not causes of action per se, but rather a doctrine by which plaintiffs can delay prescription of their claims. *See Crump v. Sabine River Auth.*, 98-2326 (La. 6/29/99), 737 So. 2d 720, 726. When the operating cause of an injury is not continuous, the action is barred "one year from the date in which plaintiff acquired, or should have acquired, knowledge of the damage." *Id.* (citations omitted). When "the operating cause of injury is a continuous one and gives rise to successive damages, prescription dates from the cessation of the wrongful conduct causing the damage." *Id.* Both continuing torts and continuing trespasses require ongoing unlawful acts and not merely a "continuation of the ill effects of an original, wrongful act." *Id.* at 728; *see Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 1003-04 (noting a continuing trespass applies the same inquiry as a continuing tort).

Torts are "continuous in nature where each individual act would not necessarily give rise

to a cause of action; but instead, the cumulative effect of regularly-occurring or continuous actions results in successive damages from day to day." *James v. New Century Mortg. Corp*., No. CIV.A. 04-194, 2006 WL 2989242, at *7 (E.D. La. Oct. 17, 2006) (citations omitted). Plaintiff bears the burden of establishing the "continuous action and continuous damage" for the continuing tort doctrine to apply. *Id.*at *6.

Plaintiffs have not sufficiently pleaded a theory of continuing tort or continuing trespass. First, Plaintiffs' reliance on *Marin* is misplaced. In *Marin*, the court determined that the "operating cause of plaintiffs' injury was still the actual disposal or storage of the oilfield waste in unlined pits on plaintiffs' property." 48 So. 3d at 254. The closure of the actual pits simply "constituted the termination of continuing conduct" based on the specific facts of the case. *Ritchie*, 2015 WL 9589890, at *2 (citing *Marin*, 48 So. 3d 234). Thus, despite Plaintiffs' claim that none of the pits were properly closed, an open pit on its own does not support application of a continuing tort theory.

Second, Plaintiffs allege "[t]he pollution by the defendants continues to migrate," (Petition ¶ 17), but have not sufficiently pleaded that the damage-causing conduct is continuing. Under Louisiana law, there is no continuing tort or continuing trespass when the cause of the injury is not continuing, even when the ill effects of the original, wrongful act continue. *See, e.g.*, *Hogg*, 45 So. 3d at 1006 (continuing tort/trespass theory did not apply when tanks causing gasoline leakage were replaced, even though gasoline continued to remain in soil); *Crump*, 737 So. 2d at 727-28 (diversion of water was the continuing ill effect of the single tortious act of digging a canal, so continuing tort theory did not apply). According to the Petition, the oil and gas wells listed in the Petition have been plugged and abandoned or ceased operation,[2] (SNG

---

[2] The wells operated by SNG had ceased operating by August 1, 1958, and the wells

Mem. at 3 (citing Petition Ex. B. [doc. # 1-2])), and Plaintiffs have not provided facts that the damage-causing conduct did not cease years ago. Plaintiffs' allegation that the defendants are engaging in unlawful conduct is conclusory. Even if the Property remains polluted, there is no a continuing tort or continuing trespass absent some ongoing conduct, which Plaintiffs have failed to plead sufficiently.

Accordingly, Plaintiffs' claims for a continuing tort and a continuing trespass should be dismissed.

## III.    Civil Code Article 667

Plaintiffs claim Defendants are also liable under La. Civ. Code art. 667, which imposes liability on landowners or proprietors for actions that damage his neighbors. Article 667 was amended in 1996, and Plaintiffs claim Defendants are liable for damages sustained before and after the amendment. According to the Petition, the damage on the Property was "caused by [Defendants'] handling, storage, discharge, and disposal of toxic and hazardous . . . oil field waste," and the "storage and disposal of the . . . toxic and hazardous substances constitutes an ultra-hazardous activity." (Petition ¶¶ 19, 30).

The pre-1996 version imposes liability on proprietors for damage caused by ultrahazardous activities. *Morgan Plantation, Inc. v. Tennessee Gas Pipeline Co.*, LLC, No. 16-CV-1620, 2017 WL 4864489, at *5 (W.D. La. Sept. 21, 2017) (citations omitted). In pre-1996 claims, for an activity to be ultrahazardous under Louisiana law, it "(1) must relate to land or some other immovable; (2) must itself cause the injury, and the defendant must be engaged directly in the injury-producing activity; and (3) must not require substandard conduct to cause

---

operated by Conoco's predecessor-in-interest had ceased operating by May 15, 1968. (Ex. B).

injury." *Id.* "The ultrahazardous label is thus limited to those activities which present a risk of harm that cannot be eliminated through the exercise of due care." *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987) (citations and internal quotations omitted).

The post-1996 version altered the theory of a proprietor's liability. *Yokum v. 615 Bourbon St., L.L.C.*, 2007-1785 (La. 2/26/08), 977 So. 2d 859, 874. As a result, a proprietor is liable (1) if he fails to exercise reasonable care to prevent damage caused by his "works" that he knew or shown have known about; and (2) for damage "caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives." La. Civ. Code art. 667.

SNG and Conoco argue that Plaintiffs have failed to allege Defendants engaged in any "ultrahazardous" activity. (SNG Mem. at 10-11; Conoco Mem. at 6-7). Plaintiffs respond that "the storage of hazardous waste in pits constituted an ultrahazardous activity prior to 1996," which supports a cause of action under the pre-1996 version of Article 667. (Opp. Mem. at 29-30). Plaintiffs also claim to have established a cause of action under the amended version of Article 667, "which gives rise to damages upon a showing that a defendant" had knowledge that "his works would cause damage," which is "an element of proof" that Plaintiffs "should have the right to present . . . to the jury." (*Id.* at 30).

SNG responds that because it ceased operations on the Property in 1958, it cannot be held liable under the amended version of Article 667. (SNG Reply Mem. at 4). Further, Plaintiffs have not sufficiently alleged the activity at issue is ultrahazardous. (*Id.* at 4-5). Conoco responds that Plaintiffs have failed to establish that "the activity does not require substandard conduct to cause injury" to make it ultrahazardous or state a claim for absolute liability. (Conoco Reply Mem. at 6).

9

The undersigned finds that the post-1996 version of Article 667 does not apply because Plaintiffs do not allege that Defendants engaged in any oil and gas exploration and production activities post-1996, or after the wells ceased operation.

Turning to the pre-1996 version of Article 667, the allegations that Defendants stored oilfield waste in unlined pits, which damaged the Property, satisfies the first two requirements: it relates to land and caused the injury. *See Updike v. Browning-Ferris, Inc.*, 808 F. Supp. 538, 542 (W.D. La. 1992) (finding that the storage of hazardous industrial waste in open pits or ponds satisfies the first two requirements). At issue is whether Plaintiffs have alleged that "substandard conduct is [not] required to cause the damages" under the third requirement. *See id.* An ultrahazardous activity causes "injury to others, even when conducted with the greatest prudence and care." *Ainsworth*, 829 F.2d at 550 (quoting *Kent v. Gulf States Utils. Co.*, 418 So. 2d 493, 498 (La. 1982)). Whether an activity qualifies as ultrahazardous is a question of law. *Id.* For example, "[p]ile driving, storage of toxic gas, blasting with explosives, and crop dusting" are all considered ultrahazardous activities, while drilling operations are not ultrahazardous. *Id.* at 549-50.

Plaintiffs have pleaded a cause of action under Article 667 based on their allegations that Defendants, through their predecessors, stored and disposed of toxic and hazardous oilfield waste that caused damage to the Property in the form of contamination. (*See* Petition ¶¶ 19, 30).

However, at this time, the undersigned does not find that Defendants have engaged in an ultrahazardous activity. As explained in *Updike*, "whether an activity can cause injury despite great prudence and care seems to require a factual inquiry." 808 F. Supp. at 543. Courts have disagreed as to whether the disposal of hazardous waste is an ultrahazardous activity. *See id.* at 544 (finding that the storage of hazardous waste in pits is analogous to other activities that are

considered ultrahazardous under Louisiana law). *But see Bartlett v. Browning-Ferris Indus., Chem. Servs., Inc.*, 96-218 (La. App. 3 Cir. 11/6/96), 683 So. 2d 1319, 1322 ("The record here contains no evidence that a hazardous waste disposal facility cannot be safely operated or can cause harm even where due care is exercised."). Ultimately the determination is based on the evidence in the record. In the instant matter, the record is not developed enough to make such a determination. Once the record is more thoroughly developed, the parties may ask the court to revisit the issue of whether the storage of hazardous waste in pits can be done safely to prevent injury. *See Tureau*, 2015 WL 4694072, at *6 (finding the record needed to be more developed before the court could determine if "storing, releasing and disposing of radioactive oilfield waste" constituted an ultrahazardous activity).

At this point, Plaintiffs have sufficiently alleged that the activity engaged in by Defendants is ultrahazardous to survive a motion to dismiss. Accordingly, Plaintiffs' motions should be denied as to this claim.

## IV.    Civil Code Articles 2317 and 2322

Plaintiffs claim that Defendants are strictly liable under La. Civ. Code arts. 2317 and 2322. (Petition ¶ 19). Article 2317 imposes liability on an owner for damage caused by things in his custody, and Article 2322 imposes liability on the owner of a building for damage caused by the building's ruin. Pre-1996, "Articles 2317 and 2322 imposed strict liability based on status as owner/custodian, rather than personal fault."[3] *Morgan Plantation, Inc.*, 2017 WL 4864489, at *6 (citing *Celestine v. Union Oil Co. of California*, 94-1868 (La. 4/10/95), 652 So. 2d 1299, 1303). To state a claim under the pre-1996 Article 2317, a plaintiff must plead that (1) the defendant

---

[3] The pre-1996 Articles apply here because the activities at issue occurred prior to 1996.

11

had custody of the thing; (2) "the thing had a 'defect' or a condition creating an unreasonable risk of harm"; and (3) "the defective condition caused plaintiff's injuries." *Id.* (citations omitted). Under Article 2322, a plaintiff must plead "(1) the defendant owned the building; (2) the building posed an unreasonable risk of harm to others; and (3) the plaintiff was injured by virtue of that risk." *Id.*

SNG and Conoco argue that Plaintiffs' claims under Articles 2317 and 2322 must fail because although Plaintiffs have alleged that Defendants had "*garde*" of the facilities, they have not alleged any defect that presented an unreasonable risk of harm. (SNG Mem. at 7; Conoco Mem. at 8). SNG further contends that Plaintiffs have failed to allege SNG was the owner of a "building" within the meaning of Article 2322. (SNG Mem. at 8). Plaintiffs respond that "the equipment and facilities used by defendants, including unlined earthen pits, were under the custody and control of the defendants at the time the pollution occurred." (Opp. Mem. at 30). SNG and Conoco reply that merely alleging "*garde*" of the pits and equipment is insufficient to establish liability. (SNG Reply Mem. at 5-6; Conoco Reply Mem. at 6-7).

Upon review of the Petition, the undersigned finds that Plaintiffs have pleaded facts to support claims under Articles 2317 and 2322. First, Plaintiffs allege that Defendants had custody of the facilities and equipment that allegedly caused the pollution. (Petition ¶ 19). Second, Plaintiffs allege that Defendants' operations resulted in oilfield wastes deposited in unlined pits, which seeped and contaminated the soils and waters on the Property. (*Id.* ¶ 7). The oilfield wastes include hazardous and toxic substances that can cause serious health related problems. (*Id.* ¶¶ 7-11). Third, Plaintiffs allege the damage to their Property was caused by the disposal of the oilfield wastes in the unlined pits. (*Id.* ¶¶ 2, 7). These allegations are sufficient to state a cause of action. *See, e.g.*, *Morgan Plantation, Inc.*, 2017 WL 4864489, at *6 (finding allegations

that Defendants used "earthen pits for waste storage and disposal," which leaked "toxic and hazardous substances" satisfied the pleading standards to state a claim under Articles 2317 and 2322).

Accordingly, Defendants' motions to dismiss should be denied as to these claims.

**V.    Civil Code Article 2688**

Under La. Civ. Code art. 2688, a lessee is required to notify a lessor when the leased property "has been damaged or requires repair." The lessor is entitled to damages, if the lessee fails to provide notice. *Id.* Plaintiffs allege that Defendants had an obligation to notify Plaintiffs of the contamination on the Property once Article 2688 became effective in 2005. *See* Acts 2004, No. 821, § 1, eff. Jan. 1, 2005. Defendants' failure to provide notice "constitutes an active and substantial breach of the applicable mineral and surface leases" and "constitutes a tortious breach of the applicable leases." (Petition ¶ 46).

SNG and Conoco argue that Plaintiffs have no cause of action under Article 2688 because all leases referenced in the Petition were executed prior to 2005, and the law does not apply retroactively. (SNG Mem. at 14; Conoco Mem. at 11-12). Plaintiffs respond that 2688 applies to any lease on the Property still in effect on January 1, 2005 because "there was a jurisprudentially recognized duty under tort law that applied to mineral and predial lessees that preexisted the enactment of Article 2688." (Opp. Mem. at 40).

The Louisiana Supreme Court has determined that "[w]here the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute." *Block v. Reliance Ins. Co.*, 433 So. 2d 1040, 1044 (La. 1983). Article 2688 was enacted after the leases on the Property were executed, (*see* Petition Ex. C [doc. # 1-2]), and

13

cannot not apply retroactively to impose a duty on the lessee. *See Alford*, 13 F. Supp. 3d at 598 (holding that "article 2688 is not applicable to this case because it was enacted in 2005, many years after the lease in question was executed"); *Ritchie Grocer Co.*, 2015 WL 9589890, at *4.

Accordingly, Plaintiffs' claim under Article 2688 should be dismissed.

## VI.    Unjust Enrichment

Plaintiffs claim that if they "have no other adequate remedy at law, defendants are liable for unjust enrichment damages, as the defendants have been unjustly enriched by their unauthorized use of plaintiffs' land to store and dispose of toxic and hazardous contamination." (Petition ¶ 34).

SNG and Conoco claim that Plaintiffs have no claim for unjust enrichment because they have asserted of other causes of action that provide remedies at law. (SNG Mem. at 15; Conoco Mem. at 10). In response, Plaintiffs concede they cannot proceed under a theory of unjust enrichment but seek to maintain this cause of action as an alternative claim. (Opp. Mem. at 40).

"[U]nder Article 2298, the remedy of unjust enrichment is 'subsidiary' in nature, and 'shall not be available if the law provides another remedy.'" *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 700 (W.D. La. 2014) (quoting *Walters v. MedSouth Record Mgmt., LLC*, 2010-0353 (La. 6/4/10), 38 So. 3d 243, 244). Further, the "mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id.* (quoting *Walters*, 38 So. 3d at 244).

Here, Plaintiffs admit their tort, contract, and mineral code claims preclude a cause of action under a theory of unjust enrichment. Accordingly, this claim should be dismissed.

## VII.    Act 312 (La. R.S. 30:29)[4]

---

[4] La. R.S. 30:29 was enacted under 2006 La. Acts 312.

Plaintiffs assert an alternative "right of action under La. R.S. 30:29" to claim damages and relief "for the cleanup of contamination on . . . non-owned property to the extent such cleanup is required to accomplish the remediation of" Plaintiffs' Property. (Petition ¶ 42).

SNG and Conoco claim that Plaintiffs' claim under La. R.S. 30:29 should be dismissed because the statute is procedural and does not create an independent cause of action. (SNG Mem. at 16-17; Conoco Mem. at 13-14). Plaintiffs concede La. R.S. 30:29 is procedural and claim these procedures apply to this case. (Opp. Mem. at 20).

Under Louisiana law and the plain wording of the statute, La. R.S. 30:29 does not create a right of action. *Wagoner v. Chevron USA Inc.*, 45,507 (La. App. 2 Cir. 8/18/10), 55 So. 3d 12, 26 (citing *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371 (La. 7/1/08), 998 So. 2d 16, 35-36. The statute provides a "procedure for judicial resolution of claims for environmental damage to property" and "shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of a mineral lease." La. R.S. 30:29(A), (H). Because Plaintiffs have no independent cause of action under La. R.S. 30:29, this claim should be dismissed. Such dismissal would have no effect on whether the procedures outlined by the statute apply in this case.

## VIII. Land Loss and Subsidence Damages

Plaintiffs claim they are entitled to "land loss and subsidence damages." (Petition ¶ 49(H)). SNG and Conoco argue this claim should be dismissed because Plaintiffs have not alleged any land loss or subsidence, or that any contract or law imposes a duty to remediate. (SNG Mem. at 17; Conoco Mem. at 13). Plaintiffs respond that because there are implied obligations in all mineral leases, they "should be allowed to prove that the subsidence caused by the oil and gas activity on the property was the result of negligent or excessive use, or exceeded

normal and expected wear and tear." (Opp. Mem. at 18-19). SNG and Conoco reply that

Plaintiffs' response fails to provide any factual allegations to support their claims. (SNG Reply

Mem. at 2-3; Conoco Reply Mem. at 8).

Upon review of the Petition, the undersigned finds that Plaintiffs have not pleaded facts

to support their claim for land loss and subsidence and have not cited any law or contract that

imposes a duty on Defendants to conduct the remediation requested. The crux of Plaintiffs' claim

is that Defendants' operations deposited toxic and hazardous substances, contaminating the

Property. (Petition ¶¶ 7-12). Plaintiffs have not alleged Defendants engaged in activities that

caused land loss or subsidence or that any land loss or subsidence even occurred. *See Alford*, 13

F. Supp. 3d at 600 (dismissing land loss and subsidence because plaintiffs failed to allege that

any land loss or subsidence occurred during the term of the lease).

Accordingly, Plaintiffs' claim for land loss and subsidence damages should be dismissed.

**IX.    La. R.S. 30:16**

Plaintiffs claim they have the right to seek relief under La. R.S. 30:14 and 30:16.

(Petition ¶¶ 50-51).

> La. R. S. § 30:14 grants the Commissioner of Conservation (the "Commissioner")
> the duty to sue to restrain a violation or threatened violation of Louisiana's oil and
> gas regulations or orders made thereunder. La. R. S. § 30:16 allows persons in
> interest to notify the Commissioner of a violation or threatened violation of
> Louisiana's oil and gas regulations and request that the Commissioner sue to
> enjoin the violation. If the Commissioner does not bring suit within 10 days of
> receiving the notice, "any person in interest adversely affected by the violation . . .
> may bring suit to prevent any or further violations . . . ." La. R. S. § 30:16.
> However, if the suit is successful and "the court holds that injunctive relief should
> be granted, the commissioner shall be made a party and shall be substituted for
> the person who brought the suit and the injunction shall be issued as if the
> commissioner had at all times been the complaining party." *Id.*

*Watson v. Arkoma Dev.*, LLC, No. CV 17-1331, 2018 WL 1311208, at *2 (W.D. La. Feb. 5,

2018).

SNG claims that La. R.S. 30:14 and 30:16 apply "only when a person is violating or threatening to violation a provision of the conservation laws" and "do not apply to past violations." (SNG Mem. at 18-19). SNG relies on the plain reading of the statutes, which contain the present-tense phrases "is violating or is threatening to violate," and "to prevent any or further violations." (*Id.* at 19, 21 (quoting La. R.S. 30:14, 30:16)). SNG claims that applying the statutes to remedy past violations would create "absurd results that the legislature could not have intended" such as *requiring* the Commission "to file suit whenever it appears a violation has occurred in the past, despite the fact that he has the authority to issue a compliance order for past violations." (*Id.* at 23-24).

Plaintiffs respond that "an unremedied past violation of a regulation of the commissioner remains a violation until it is remedied." (Opp. Mem. at 31). Further,

> [r]eading the two statutes together, it becomes clear that when a person does not remedy a past violation, he is subject to suit by the commissioner under La. R.S. 30:14 because "that person is violating . . . a law of this state with respect to the conservation of oil and gas, or both, or a provision of this Chapter, or a rule, regulation or order made thereunder . . . ," and if the commissioner fails to file such a suit under La. R.S. 30:14, a "person of interest" can do so under La. R.S. 30:16, as this latter statute authorizes suit to "*prevent any or further violations.*"

(*Id.* at 32). SNG replies that Plaintiffs' interpretation of the statute "is inconsistent with the express terms of the statutes and the obvious intent of the legislature," and requiring the Commissioner to file suit for past violations "would unnecessarily burden the court system, waste judicial resources, and could result in rulings that conflict with the compliance orders." (SNG Reply Mem. at 7-8).

The Louisiana Supreme Court has not explicitly addressed whether La. R.S. 30:14 and 30:16 apply to remedy past violations. However, this court need not reach that determination at

this point because Plaintiffs allege an ongoing violation, not a past violation. Specifically, Petitioners allege that the defendants "are violating Statewide Order 29-B and other regulations and orders of the LDNR and office of the commissioner of conservation by failing to remediate the property to the standards set forth in Statewide Order 29-B and other applicable regulations and orders." (Petition ¶ 51). Further, Plaintiffs have notified the commissioner in writing of the violation and requested the commissioner bring suit, as required under La. R.S. 30:16. (Petition Ex. D, [doc. # 1-2]). Thus, Plaintiffs have pleaded sufficient facts to state a claim under La. R.S. 30:14 and 30:16 to survive to survive a Rule 12(b)(6) motion.

Accordingly, SNG's motion to dismiss should be denied as to this claim.

## X.    Fraud

Conoco seeks dismissal of Plaintiffs' allegations of fraud because they do not meet the heightened pleading standard under Fed. R. Civ. P. 9(b). (Conoco Mem. at 5-6). Plaintiffs respond that the "allegations of fraud are related to the defendants' superior knowledge," and therefore may be alleged generally under Rule 9(b). (Opp. Mem. at 13-14).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standing when a party alleges fraud, which requires the party to "state with particularity the circumstances constituting fraud or mistake." "The Fifth Circuit 'interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Alford*, 13 F. Supp. 3d at 594 (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002)). Rule 9(b) permits "malice, intent, knowledge, and other conditions of a person's mind" to be alleged generally. However, this relaxed standard is not "a broad-based exception" and is not appropriate in this case. *See Constance v. Austral Oil*

*Expl. Co.*, No. 2:12-CV-1252, 2013 WL 6578178, at *6 (W.D. La. Dec. 13, 2013) (declining to apply the relaxed pleadings standards under Rule 9(b) in claim that defendants' oil and gas exploration and production activities contaminated plaintiffs' property). Thus, to survive a motion to dismiss, plaintiffs "must plead specific facts describing the fraud allegedly committed by each defendant." *Alford*, 13 F. Supp. 3d at 594. Allegations of fraud are deficient when plaintiffs "fail to identify when the allegedly fraudulent activities took place," do not distinguish between defendants, and do not "set forth each defendant's responsibility for the allegedly fraudulent activities." *Id.* (citations omitted).

Plaintiffs claim that Defendants committed fraud in relation to the oil and gas exploration and production activities and the concealment of toxic and hazardous contamination on the Property. In the Petition, Plaintiffs list seven types of fraudulent acts that Defendants engaged in. (Petition ¶ 14). However, Plaintiffs have failed to specify when the activities took place or which Defendants committed the allegedly fraudulent acts. Plaintiffs have merely engaged in "group pleading," which is insufficient under Rule 9(b). *See Alford*, 13 F. Supp. 3d at 594. Plaintiffs' claim for fraud does not satisfy the Rule 9(b) standard, and therefore, should be dismissed.

## XI.    Unauthorized Saltwater Disposal and Injection

Plaintiffs' claim that Defendants are liable for the unauthorized injection of saltwater or brine into the subsurface of the Property. (Petition ¶ 31). Conoco argues that this claim should be dismissed because none of the eight wells listed in Exhibit B are saltwater disposal wells. (Conoco Mem. at 10). Plaintiffs respond that preliminary testing of the pits identified in Exhibit A show soil contamination, and data incorporated into Exhibit D demonstrates there is salt on the Property in and around three of the pits in excess of the applicable regulatory standards, which support a finding of unauthorized saltwater disposal. (Opp. Mem. at 21 (citing Petition Exs. A,

D)). Conoco replies that there is no basis for an unauthorized injection claim given that none of the wells are saltwater disposal wells. Further, while Plaintiffs claims "could be characterized as claims for 'unauthorized saltwater disposal,' [Conoco] specifically addressed Plaintiffs' claims for unauthorized injection in its motion." (Conoco Reply Mem. at 7).

Upon review of the Petition and its attached exhibits, the undersigned finds that Plaintiffs have sufficiently alleged facts to support a claim for unauthorized saltwater disposal and injection. Plaintiffs have alleged that the oilfield wastes deposited into pits by Defendants or their predecessors-in-interest include produced water, which "is a hazardous brew of various compounds, metals, salt and radioactive substances," and contains excess amounts of salt. (Petition ¶¶ 7, 9). Plaintiffs also provided an environmental assessment of the Property, which supports a finding of excess salt. (Petition Ex. D). Thus, Plaintiffs have alleged enough facts to provide the grounds for an entitlement to relief. *See Iqbal*, 556 U.S. at 678.

Accordingly, Conoco's motion to dismiss should be denied as to this claim.

## XII.    Breach of Express Lease Terms

Plaintiffs claim Defendants are liable for the breach of leases and contracts that apply to the Property. (Petition ¶¶ 18, 20-22, 27, 44). Conoco argues that Plaintiffs' claims for breach of express contract should be dismissed because Plaintiffs have failed to point to any provision in a lease or contract that Conoco breached. (Conoco Mem. at 13). Plaintiffs respond that "Conoco has clearly been placed on notice as to the applicable agreements which were referenced and incorporated into the Petition and Conoco is aware of the contents of those agreements." (Opp. Mem. at 14). Further, Plaintiffs' Petition contains a list of the known mineral leases and other agreements which affect the Property and can be found in the public records. (*Id.* at 15 (citing Petition Ex. C)). According to Plaintiffs, the contracts referenced in the Petition, obligate

20

Defendants "to remove the contamination from the pit areas and other polluted areas and clean the groundwater." (*Id.* at 15). Conoco replies that Plaintiffs point to only one provision in one lease and argue that any other breach of express contract claim should be dismissed. (Conoco Reply Mem. at 8).

Upon review of the Petition, the undersigned finds that Plaintiffs have sufficiently pleaded a cause of action for breach of express contract. First, as Conoco concedes, Plaintiffs have sufficiently referenced Surface Lease #1 and the obligations imposed upon Conoco under the lease. (Conoco Reply Mem. at 8; Petition Ex. C). Second, the Petition includes a list of additional leases, and Plaintiffs explain that Defendants violated them by failing to "remediate the property to its original condition" and by exceeding their use rights. (Petition ¶¶ 20, 22).

Accordingly, Defendant's motion to dismiss should be denied as to this claim.

## XIII. Claims Barred by Notice Requirements or that are Otherwise Premature

In its motion, Conoco makes two notice arguments: (1) to reserve any right to pre-suit written notice under Mineral Code art. 136; and (2) to reserve any right to pre-suit notice under the May 1967 leases listed under Lease # 3. (Conoco Mem. at 14-16; Conoco Reply Mem. at 9). Plaintiffs respond that Article 136's notice requirement does not apply to this case. (Opp. Mem. at 35). Further, with respect Lease # 3, Plaintiffs provide the language of the lease and claim the filing of this suit constitutes written notice of the breach. (*Id.* at 36-37). Conoco replies that it is unclear if Conoco is connected to Lease # 3 and that Plaintiffs' claim should be dismissed because it did not receive notice before this suit was filed. (Conoco Reply Mem. at 9).

1. <u>Article 136</u>

Conoco and Plaintiffs agree that Plaintiffs are pleading a claim for restoration under Mineral Code art. 122. (Petition ¶¶ 26, 28; Conoco Mem. at 15; Opp. Mem. at 37). At issue is

21

whether the Mineral Code imposes a notice requirement on restoration claims. Article 122 imposes a duty on a mineral lessee "to develop and operate the property leased as a reasonably prudent operator." La. R.S. 31:122. Article 136 requires a lessor seeking relief from a lessee "arising from drainage of the property leased or from any other claim that the lessee has failed to develop and operate the property leased as a prudent operator" to provide his lessee "written notice of the asserted breach." La. R.S. 31:136. In *Broussard v. Hilcorp Energy Co.*, the Supreme Court of Louisiana held that claims for restoration and remediation "are separate and distinct from any claims [for the failure] to develop and operate the property as a reasonably prudent operator" and the written notice requirement under Mineral Code art. 136 is not applicable to claims for remediation and restoration. 2009-0449 (La. 10/20/09), 24 So. 3d 813, 820-21. Thus, Conoco is not entitled to reserve any right to pre-suit written notice under Mineral Code art. 136.

       2.  <u>Lease # 3</u>

Lease # 3 provides that

> [I]n the event lessor considers that operations are not being conducted in compliance with this contract, lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and lessee shall have sixty (60) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument.

(Opp. Mem. at 37; Conoco Reply Mem. at 9 n.4).

Plaintiffs concede that the only notice provided to Conoco was in filing this suit. (Opp. Mem. at 37). The Louisiana Supreme Court has not weighed in on whether the filing of a suit constitutes notice of a breach, and thus, this court must make an *Erie* guess.[5] *Estess v. Placid Oil*

---

[5] "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In

*Co.*, No. CIV.A. 12-0052, 2012 WL 1222729, at *3 (W.D. La. Apr. 10, 2012); *see Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."). In *Lucky v. Encana Oil & Gas (USA), Inc.*, the court determined that plaintiff was bound by a lease provision identical to the one in this case, and filing a suit before providing such notice was premature. 45,413 (La. App. 2 Cir. 8/11/10), 46 So. 3d 731, 733-34. Further, in *Jumonville v. Sunset Petroleum, Inc.*, the court held that "the notice provision of the lease between the parties requires that respondents are entitled to notice and opportunity to cure before an action can proceed." 2013-0895 (La. App. 1 Cir. 9/13/13), 2013 WL 8290614, at *1. Finally, in *Broussard*, the court dismissed plaintiffs' claim for breach of the lease against one defendant whose lease contained "a provision requiring notice of 'facts relied on as constituting breach' of the lease," which, on appeal, the Louisiana Supreme Court determined was correct. *Broussard v. Hilcorp Energy Co.*, 2008-233 (La. App. 3 Cir. 12/10/08), 998 So. 2d 946, 954-55, *aff'd and remanded*, 24 So. 3d at 818 n.8. These cases are instructive and demonstrate that the filing of a lawsuit does not constitute notice. To permit the filing to serve as notice would obviate the need for the notice requirement because notice is necessary so that the lessee can comply with any obligation under the lease prior to the commencement of an action. Plaintiffs have not alleged that they provided any other written notice to Conoco as required under Lease # 3. Accordingly, Plaintiffs' claims of breach of contract against Conoco

---

connection with this motion, Plaintiffs assert causes of action only under Louisiana state law. To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

that arise under Lease # 3 should be dismissed. Plaintiffs may continue to pursue their causes of action against Conoco that do not arise out of a breach of this lease or are otherwise dismissed pursuant to Rule 12(b)(6).

## XIV.  Withdrawn Claims

Plaintiffs have agreed to withdraw their claims against SNG and Conoco under Mineral Code art. 22 and La. Civ. Code arts. 576, 577, and 645; for civil fruits under La. Civ. Code art. 486; for backfilling of canals; and for punitive damages under La. Civ. Code art. 2315.3. (Opp. Mem. at 54).

## XV.  Amendment

At the end of their opposition brief, Plaintiffs request leave to amend their complaint under Fed. R. Civ. P. 15(a). (Opp. Mem. at 42-43). "Rule 15(a) applies where plaintiffs expressly requested to amend even though their request was not contained in a properly captioned motion paper." *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Although a formal motion is not required, the plaintiffs must "set forth with particularity the grounds for the amendment." *Id.* "A bare request in an opposition to a motion to dismiss— without any indication of the particular grounds on which the amendment is sought . . .—does not constitute a motion within the contemplation of Rule 15(a)." *Id.* Here, Plaintiffs argue that the reasons to deny a motion for leave to amend do not apply, but they do not provide the particular grounds for amendment. Thus, in the absence of a proposed amendment or an explanation of the specific amendment sought, leave to amend should not be granted.

## <u>Conclusion</u>

Based on the foregoing, the undersigned finds that Plaintiffs have stated a plausible claim (1) under La. Civ. Code arts. 667, 2317, and 2322; (2) under La. R.S. 30:14, 30:16; (3) for

unauthorized saltwater disposal and injections; and (4) breach of express lease terms.

Further, the undersigned finds that Plaintiffs have failed to state a plausible claim against any Defendant (1) under Restatement (Second) of Torts § 324A; (2) for continuing tort and continuing trespass; (3) under La. Civ. Code art. 2688; (4) for unjust enrichment; (5) under La. R.S. 30:29; (6) for land loss and subsidence; (7) for fraud; or (8) under Lease # 3. In addition to dismissing these claims against SNG and Conoco, these claims should be dismissed against all Defendants pursuant to Rule 12(b)(6). *See McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) ("The court possesses the inherent authority to dismiss the action *sua sponte*, without motion by a defendant."); *McCoy v. Wade*, No. CIV.A.06 2292, 2007 WL 1098738, at *1 (W.D. La. Mar. 12, 2007) (noting that a court may dismiss federal claims "on its own motion under Rule 12(b)(6) as long as the procedure employed is fair," and a Report and Recommendations is fair because it provides plaintiffs with sufficient notice of, and an opportunity to respond to, the possible dismissal).

Accordingly,

IT IS RECOMMENDED that the motions to dismiss filed by SNG and Conoco [docs. # 33, 34] be GRANTED IN PART and DENIED IN PART.

IT IS FURTHER RECOMMENDED that Plaintiffs' claims against all Defendants— SNG, Conoco, Arkoma Development LLC, Arkoma Louisiana LLC, Atlantic Richfield Co., B.P. America Production Co., Kabco Oil & Gas Co., and Kabco Production Co.—under Restatement (Second) of Torts § 324A, for continuing tort and continuing trespass, under La. Civ. Code art. 2688, for unjust enrichment, under La. R.S. 30:29, for land loss and subsidence, for fraud, under Lease # 3, under Mineral Code art. 22, under La. Civ. Code arts. 486, 576, 577, 645, 2315.3, and for backfilling of canals be DISMISSED WITH PREJUDICE.

25

In all other respects, IT IS RECOMMENDED that SNG and Conoco's motions to dismiss be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 15th day of November 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

26